WILLIAM J. PARKER v. PINE TREE LUMBER COMPANY.[1]

December 13, 1901.

Nos. 12,749—(99).

**Personal Injury—Contributory Negligence.**

In an action brought to recover for personal injuries received by plaintiff while in defendant's employ, in which action he obtained a verdict, it is *held* that, from the evidence in the case, it conclusively appears that he was guilty of contributory negligence, precluding a recovery of damages.

Action in the district court for Morrison county to recover $2,000 for personal injuries. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of plaintiff for $1,848. From an order denying a motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and new trial granted.

*Lindbergh & Blanchard,* for appellant.

*F. W. Lyon* and *True & Rindahl,* for respondent.

COLLINS, J.

The plaintiff brought this action to recover damages for injuries

[1] Reported in 88 N. W. 261.

received while working for defendant in its sawmill at Little Falls, Minnesota.

He had worked about the mill at night some two months when the accident occurred, more or less about what is known as a "trimmer," and it was on this trimmer that he was injured. The trimmer in this particular instance consisted of a table over twenty-four feet long and seven and one-half feet wide, located on the east side of the mill, against the wall, or very near it, which table was equipped with a number of circular saws, each about ten inches in diameter, and arranged in a line from north to south, a few feet apart. At its front edge the surface of the table stood two feet four inches from the floor, and at the rear it was a few inches higher. These saws revolved from east to west, each making about three thousand revolutions a minute when in operation. Each saw was set in a frame, and by means of levers and trips could be dropped independently below the surface of the table. When raised, for the purpose of being put into action, about one-half of each saw extended above this surface.

What was known as the "head saw" was two feet from the south end of the table, and the foot saw was twenty-four feet therefrom, to the north. The balance thereof were located at intervals between the head and foot saws. Boards were placed on moving chains and brought against the saws for the purpose of trimming and squaring the ends. Then, passing on over the table, they dropped out of an aperture in the wall of the mill to the outside, and were there handled by graders, whose business it was to determine their grade or quality, and to place them in piles. The appliance for lowering the head saw, with its frame, was a lever which caught in a bar and pushed it back, and also a trip which was operated by the foot. To lower, it was necessary for the operator to step upon the trip, catch the lever on the bar, push the lever back; and thereupon the saw, with its frame, weighing between fifty and sixty pounds, dropped entirely below the surface of the table. It could only be raised by operating the lever. From the testimony it conclusively appeared that if the trip was properly stepped on, and the lever pushed back, the bar must drop, and the saw fall, with its frame, by force of gravity. There was testi-

mony, however, from which it might be found that occasionally the saw would not drop when the trip and lever were both operated, but from observation and experience the plaintiff knew this thoroughly.

The accident was at night, and on that in question he was acting as head trimmer; his station being on the floor, near the head saw. While standing there he noticed a small block of wood caught in one of the chains about thirteen feet from where he stood, and about the middle of the table lengthwise. All the saws except those at the ends (twenty-four feet apart) had been previously dropped, and, of course, were not then running. Realizing that the block would give trouble if not removed, plaintiff asserts that he applied the trip and the lever for the purpose of lowering the head saw, and to put it out of motion, and immediately stepped upon the table at its south end, within less than two feet of where the saw would revolve if in motion, and passed around to the south and east of the place toward the block. Discovering that one of the graders had removed it from under the chain, he turned around, and while passing back in the two-foot space the revolving saw first caught one leg of his trousers, and then caused the injuries complained of. The saw had not been dropped, but was in motion all of the time.

The negligence relied upon seems to be threefold: First, that the appliance for lowering the saw was defective, in that it would not always drop down upon the application of the trip and lever; second, that the plaintiff had failed to box or protect the saw (which is admitted) as required by G. S. 1894, § 2248; third, that the mill was insufficiently and improperly lighted.

It is contended by defendant's counsel that the court below erred in many respects during the trial, and especially in refusing to charge the jury as requested by them, and also in its statement of the law in accordance with the request of plaintiff's counsel. It is also argued that from the facts in this case it conclusively appears that the plaintiff was guilty of such contributory negligence as will absolutely prevent a recovery for damages received by him when coming in contact with the saw.

We do not think it necessary to consider all of the assignments

of error, and we assume that the testimony was sufficient to warrant a finding that the appliance for lowering the saw was out of order, and that at times it would not respond to the efforts of an operator to drop it, and also that the lights used in the mill were not in the best order and not in sufficient numbers; further, that it appeared from the testimony that the saw could have been guarded so as to prevent, in all probability, the accident in question. Notwithstanding all these things, it is very evident that the plaintiff was guilty of contributory negligence of a very gross character. The floor space in front of this table was entirely clear. There were no saws above the table surface for a space of twenty-four feet. There was nothing to prevent plaintiff from stepping upon the table at any point along this clear space, if it were necessary. He need not have gone within twelve feet of a saw. There was a block board, so called, sixteen inches in width, and practically of the same length as the table, suspended from the ceiling a little in front of the saws when elevated; the lower edge being about four inches, and the upper or top of the board about twenty inches, from the surface of the table; the use and object thereof being to prevent blocks from flying in the faces of the men standing at work in front of the trimmer. This board swung back and forth, and it was undisputed that the plaintiff could have easily pushed or pulled it out of the way, or he could have stepped over it, and in that manner have reached the block as it lay under the chain, if it was necessary for him to step upon the table, of which there was no proof. For there was no testimony as to the distance this block lay from the front, and consequently none at all tending to show that the plaintiff could not have reached it with his hand while standing on the floor, and without going onto the table at all.

It was not shown that blocks had ever been caught in the chain before, or that it was necessary, or even convenient, to go upon the table to remove them when so caught. The plaintiff knew when he first noticed the block that the saw was running at a dangerous rate of speed, and, of course, he appreciated the danger in case he came in contact with it. He also knew the manner in which the saw was lowered into a place where it could not injure him, and

that the lowering appliance sometimes failed to perform its work. His knowledge as to the actual conditions is best understood by calling attention to the following excerpts from his own testimony:

"Q. And you could tell whether that lever caught in the end of that bar, couldn't you? A. Yes, sir. Q. And, if it did catch, you could tell whether it pushed the bar back or not, couldn't you? A. Yes, sir. Q. And then, when you stepped on the trip, you could tell whether or not the saw lowered? A. Yes, sir."

He could also tell all this without looking, as appears from the following testimony:

"Q. When you stepped on the trip, you could tell whether the saw lowered? A. If the trip came out, the lever came out. You could tell. Q. By the Court: You could tell by means of the lever whether the saw lowered or not? A. Yes, sir. Q. Could you tell, without looking, whether the saw lowered or not? A. Yes, sir; there would be a jar from the saw. Q. You could tell by the jar? A. Yes, sir. Q. Do you know whether the saw lowered that night, or not, when you applied the trip and lever? A. I don't."

From this it conclusively appeared that plaintiff knew by stepping on the trip whether or not it operated and the saw dropped below the surface of the table. He could also tell by means of the lever, and the manner in which it worked. He could also tell, without looking, whether or not the saw dropped, because of the jar it made when it went down. Of course, he could tell by looking, for he admitted this; and there is no claim that it was so dark at this place as to prevent his seeing the saw when above the surface of the table.

Notwithstanding these means of ascertaining the situation and condition of the saw, by using either the sense of hearing or of seeing, he testified that he was unable to tell whether the saw was lowered, or not when he stepped upon the table. He should have acquired the knowledge before acting. Without taking the slightest precaution to ascertain the facts by looking, and evidently neglecting the information which would have been conveyed to him by the jar or noise if the saw had been dropped by his efforts, he immediately walked into the dangerous place, and attempted

85 M.—2

to pass the saw on two sides thereof, where the space was not more than two feet in width. That he entirely disregarded the means of knowledge he had, and which actually informed him as to the conditions, and went into a very dangerous place in a noticeably heedless and reckless manner, is obvious. He fully realized that, if the saw was not lowered below the surface of the table, it must be running at a very rapid rate of speed; and he also knew that, once lowered, the saw could not spring back into position. That this was a physical impossibility, from the construction of the trimmer, was conclusively shown at the trial.

The plaintiff cannot be relieved from the charge of contributory negligence because the appliance was out of order, or because the saw was not boxed, or because the mill was imperfectly lighted. He well knew the exact situation in all these respects, and, when attempting to pass by the revolving saw without using his senses, took the risks of an accident. It was his duty to exercise ordinary care and prudence,—care and prudence commensurate with the occasion. There was some testimony tending to show that he had called the attention of the foreman to the condition of the lowering appliance a few weeks before this accident. What was said on this occasion did not fully appear, and, in view of the scantiness of the testimony upon this subject, we are of the opinion that no weight should be attached to what was said to the foreman or to his reply. On the record, the verdict for plaintiff cannot be sustained.

We are of the opinion that this is not a case for the entry of judgment notwithstanding the verdict, but one in which a new trial should be had.

That part of the order which denied a new trial is reversed, and the case remanded for further proceedings.